(No. 37344.—

MARIE A. DEMPSKI, Appellee, *vs.* FRANK DEMPSKI *et al.*, Appellants.

*Opinion filed February 1, 1963.*

EARL J. WASNESKI and FINN & GEIGER, all of Waukegan, (FRED H. GEIGER, of counsel,) for appellants.

LIDSCHIN & PUCIN, of Waukegan, (ELLIS E. FUQUA, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a direct appeal by defendants, the administrator and certain heirs of the estate of Julia Dempski, deceased, from a decree of the circuit court of Lake County, entered on a jury verdict, ordering specific performance of decedent's oral contract to devise her estate to plaintiff, Marie A. Dempski. A freehold is involved.

The principal issues presented by the appeal include: whether the evidence established a contract to make a will; whether section 2 of the Evidence Act, (Ill. Rev. Stat. 1959, chap. 51, par. 2,) barred plaintiff's testimony and that of a defendant called by plaintiff as an adverse witness; and whether the court abused its discretion in refusing to permit certain witnesses of defendants to testify. Rule 38 of this court, which does no more than to reflect the long established practice in this jurisdiction, provides that a party prosecuting an appeal shall present an abstract sufficient to present fully every error relied upon for reversal, (Ill. Rev. Stat. 1961, chap. 110, par. 101.38,) and our decisions have made it clear that this duty extends to the inclusion of evidence essential to the disposition of the contentions urged. (*Thillens, Inc.* v. *Department of Financial Institutions,* 24 Ill.2d 110; *People ex rel. Rose* v. *Craig,* 404 Ill. 505.) Under this rule we would be fully justified in refusing to consider the issue relating to the sufficiency of the evidence, for defendants have presented an abstract which omits completely the testimony of twelve witnesses, (five for plaintiff and seven for defendants,) essential and relevant to such issue. However, because we are committed to a course of avoiding a harsh construction of the rule where possible, (*People ex rel. Kunstman* v. *Nagano,* 389 Ill. 231, 237,) and under the circumstance that plaintiff has filed a supplemental abstract substantially overcoming the deficiency, we reluctantly consider such issue.

Certain uncontroverted facts appear from the record. Steve Dempski, Sr., and his wife, Julia, had 10 children, consisting of plaintiff, Marie A. Dempski, and the defendants in this proceeding, four of whom filed no pleadings, whereupon they were defaulted and the complaint confessed as to them. Defendants all married and left home. Plaintiff remained single and lived with her parents until their death. She not only did the housework and ministered to her handicapped parents, but attended to the business needs

of their property and helped support the family. She started working at age 14, first as a domestic and then as a factory worker, and had been employed by the American Steel and Wire Company since 1943. Her earnings there were about $3,955 a year and were used to maintain the family. She also gave her parents $1,500 received from an insurance company, which was used to start construction of a house on the rear of their lot, from which they realized some income. Plaintiff's father, Steve Dempski, Sr., had not worked since 1924, when he was injured in an industrial accident. At the time of his death in 1954 his legs were ulcerated from the knees to the ankles and he was blind in one eye. His wife, Julia, died in 1959. She had been handicapped since 1951, when she broke her hip and could walk only with crutches.

The evidence respecting the alleged contract to make a will was conflicting and we see no beneficial purpose to be served by setting it forth in detail. In substance, it was the testimony of the plaintiff, of her sister, Frances Gramacki, who was a party defendant, and of five disinterested witnesses who had known the parents throughout the years, that both Steve and Julia Dempski had promised and represented on numerous occasions that their property would be the plaintiff's if she remained with them, and because she had cared for them and supported them. As opposed to this, several of the defendants denied the existence of a contract between their parents and the plaintiff, while another sister and two disinterested witnesses testified to statements by Julia Dempski indicating a desire that all of the children should share equally in the property at her death. Undisputed evidence shows plaintiff did in fact remain with her parents and furnished nursing and household services and support to an extraordinary degree. Upon a consideration of all of the evidence, and with deference to the jury in its function of resolving the conflicts in evidence and the credibility of the witnesses, we are of the opinion that the

existence of the contract and its terms were sufficiently established so as to entitle plaintiff to a decree of specific performance. Cf. *Tess* v. *Radley,* 412 Ill. 405.

In denying the existence of a contract to make a will and plaintiff's right to specific performance, defendants principally contend that plaintiff's services were rendered gratuitously and, to sustain their position, advance the rule that where members of a family reside together and some of them render services for others, there is a presumption from the familial relationship that such services were rendered gratuitously without contemplation of wages or other compensation. (*Legate* v. *Legate,* 249 Ill. 359; *Finch* v. *Green,* 225 Ill. 304.) That rule, however, does not bar the plaintiff's claim. The presumption may be overcome and the reverse established by proof of an express or implied contract. (*Tess* v. *Radley,* 412 Ill. 405; *Heffron* v. *Brown,* 155 Ill. 322.) Here it is undisputed that plaintiff not only rendered care and services far beyond mere gratuities, but also there is credible evidence that her conduct had reference to the promises of her parents to give her their property if she would remain at home and care for them.

As previously noted Frances Gramacki, one of the defendants, was called by the plaintiff as an adverse witness and was permitted to testify, over defendants' objection, to statements of Julia Dempski supporting the plaintiff's position. Defendants now argue that the admission of such testimony was error in that it violated section 2 of the Evidence Act. (Ill. Rev. Stat. 1959, chap. 51, par. 2.) That section provides in substance that no party to a civil action or person directly interested should be allowed to testify therein of his own motion, or in his own behalf, when the adverse party sues or defends as the executor, administrator, heir, legatee or devisee. To be within the prohibition the witness must be a party or interested person, must seek to testify of his own motion and in his own behalf, and the adverse party must be suing or defending in one of the

enumerated capacities. (Cleary, Handbook of Illinois Evidence, sec. 3.2, p. 22.) In construing the section this court has distinguished between the requirement of "interest," and the additional requirement that the testimony must be on the witness's behalf to be within the statutory exclusion. (*Keithley* v. *Stafford*, 126 Ill. 507; *Hoffner* v. *Custer*, 237 Ill. 64; *White* v. *Willard*, 232 Ill. 464; *Duffy* v. *Duffy*, 243 Ill. 476.) In the *Duffy* case, last cited, it was stated at p. 481: "It is only when called to testify in his own interest that a party or interested person is disqualified as a witness. He is competent when called by the party opposed to him in interest."

In the case at bar, Frances Gramacki, though one of the defendants, neither testified of her own motion, since she was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1959, chap. 110, par. 60,) nor in her own behalf, since her testimony indicated that her mother promised to give the house and all the property to Marie because Marie had taken care of her parents, in which event the witness would get nothing from the estate. Under these circumstances, her testimony could not be deemed barred by section 2 of the Evidence Act.

Nor was her testimony inadmissible under our decision in *Callaghan* v. *Miller*, 17 Ill.2d 595, cited by defendants. In that case a real-estate broker, who would make a commission if plaintiff prevailed in a suit for specific performance of a real-estate contract, testified that the decedent signed the requisite memorandum establishing such a contract. We held that although such testimony was probably incompetent, it was not reversible error in view of other supporting evidence. Our statement that the "interest" which would disqualify a witness must be "direct and immediate, and result in *gain or loss* from the judgment or decree," (emphasis supplied) is in no way determinative here. Admittedly, Frances Gramacki was an "interested person," as well as a party to the litigation, but the crucial

fact is that her testimony, unlike that of the broker in the *Callaghan* case, was not in her own behalf or interest. The admission of her testimony, therefore, in no way constituted error. We add, too, that the suggestion of defendants that there was collusion between the plaintiff and this witness is completely without support in the record.

Complaint is next made that plaintiff's testimony was also inadmissible under the Evidence Act. And while it may be agreed that her testimony was within the purview of section 2, it was at least partially admissible, in view of the prior testimony of adverse parties concerning conversations with the plaintiff and their mother, under the third exception of section 2 which provides in substance that where a party testifies in behalf of the party suing or defending to any conversation or transaction with the opposite party in interest, then such party shall be permitted to testify to the same conversation or transaction. It may be agreed, too, that a portion of plaintiff's testimony did not relate to the conversations testified to by the adverse witnesses and was therefore improper to that extent. Nonetheless, the admission of such testimony need not be deemed reversible error, since it did no more than to substantiate the testimony of disinterested witnesses already in the record and which, in itself, established the contract and justifies the decree. Cf. *Callaghan* v. *Miller,* 17 Ill.2d 595, 601-602.

Prior to trial, as permitted under the rules of this court, plaintiff served a written interrogatory upon defendants asking the names and addresses of persons having "any information touching on the defense set forth in Defendants' Answer to Plaintiff's Complaint." (See: Ill. Rev. Stat. 1959, chap. 110, pars. 101.19—11 and 101.19—4(1); *Hruby* v. *Chicago Transit Authority,* 11 Ill.2d 255.) The "defense" referred to was a general denial. In response to the interrogatory defendants listed the names of several persons whom they later called as witnesses, and two who were not called. At the trial, after plaintiff's case was fin-

ished, defendants offered the testimony of three witnesses whose names did not appear on the answer to the interrogatory, counsel explaining that he had not known about the witnesses, that they were persons who had once resided near the Dempski family but had moved out of the State, and that his clients "hadn't thought" of the witnesses until a conference held at the conclusion of plaintiff's case. When plaintiff's counsel objected the court refused to permit the witnesses to testify, but did allow defendants to make an offer of proof. It is now contended by defendants that this ruling was reversible error.

Based upon *Reske* v. *Klein,* 33 Ill. App. 2d 302, 306, defendants first attack the interrogatory itself and assert that it was improper as calling for a conclusion on the part of defendants. This objection, however, was not raised and ruled upon below and will not be considered for the first time on appeal. The determination of whether or not there was wrongful or inexcusable noncompliance with the discovery order was, in the first instance, the responsibility of the trial judge, and from the record before us it does not appear that his discretion was improperly exercised.

As a final ground for reversal defendants contend that the court erred in refusing to give a particular jury instruction. They have failed, however, to set forth all of the instructions in their abstract, including instead only the disputed instruction. Such a failure is fatal. Courts of review in this jurisdiction have repeatedly held that error cannot be predicated upon the giving, refusal or modification of instructions unless all the instructions are set out in the abstract. *Mitchell* v. *Van Scoyk,* 1 Ill.2d 160; *City of Chicago* v. *Wohlbach,* 316 Ill. 203; *Rench* v. *Bevard,* 29 Ill. App. 2d 174.

The decree of the circuit court of Lake County is affirmed.

*Decree affirmed.*