RICHARD AHLVERS, Plaintiff, *v.* TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant and Third-Party Plaintiff-Appellee.—(R. H. BOGLE COMPANY, Third-Party Defendant-Appellant.).

(No. 73-254;

Fifth District—August 20, 1975.

Robert W. Wilson, of Burroughs, Simpson & Wilson, of Edwardsville, for appellant.

. Roberts, Gundlach & Lee, of Belleville (Richard M. Roessler, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This appeal is from a judgment entered on a jury verdict in the Circuit Court of Madison County in favor of third-party plaintiff, Terminal Railroad Association of St. Louis, against third-party defendant, R. H. Bogle Company.

The plaintiff, Richard Ahlvers, an employee of the railroad was injured in the course of his employment. He commenced an action against his employer under the Federal Employers Liability Act (45 U.S.C. § 51 *et seq.* (1970)), alleging that he was injured as a result of being sprayed by chemicals by the railroad's employees during weed spraying

in the railroad's yards. The complaint alleged various charges of negligence including failure to furnish plaintiff a reasonable safe place in which to work.

The railroad answered, denying these allegations of negligence, and filed a third-party complaint against R. H. Bogle Company alleging a contract whereby the later undertook for a consideration to perform the weed spraying in the railroad's yards and the injury of its employee because of the negligence of the third-party defendant. The third-party complaint alleged, in two counts, an express contract of indemnity and a duty of common-law indemnity, based on the theory of active-passive wrongdoing, should judgment be recovered against the railroad in the principal action.

Prior to trial the plaintiff and railroad settled the Federal Employers Liability claim and the matter proceeded to trial on the count of the third-party complaint based on the express contract of indemnity, the count on implied indemnity having been dismissed on motion of the railroad. The railroad by leave of court amended the remaining count by removing all allegations of negligence on Bogle's part. The effect of this was to charge that the plaintiff, Ahlvers, was injured by the conduct, acts or omissions of Bogle without characterizing its conduct as negligent.

The R. H. Bogle Company, third-party defendant-appellant, raises two questions for review: whether its motions for directed verdict or, alternatively, judgment *n.o.v.* should have been allowed; and whether certain trial errors entitle it to a new trial.

Supreme Court Rule 342 (Ill. Rev. Stat. 1973, ch. 110A, par. 342), requires the appellant to furnish the reviewing court either excerpts or an abstract sufficient to enable the court to decide the issues presented for review. The issues presented for review here require an understanding of the testimony and evidence adduced at trial; however, the excerpts contain only the several pleadings filed in the trial court. The report of proceedings omits the testimony of the plaintiff Ahlvers, and the record on appeal is deficient in several other respects.

In *Shaw v. Kronst,* 9 Ill.App.3d 807, 293 N.E.2d 153 (1973), this court stated:

> "In order for the court of appeal to understand the questions which are presented it is essential that the court be able to determine these questions conveniently. It is true that the record on appeal is available to the court but it must be obvious that with a multiple judge panel each one is not and cannot be simultaneously possessed of the record. While at one time it is possible that counsel could have misunderstood the necessity of putting

these matters in the abstract, the present wording of the rule is too clear to admit of misunderstanding. * * *

The abstract or the excerpts constitute the pleading of the appellant in a court of review and they must contain everything necessary to decide the issues raised in the appeal. (*Denenberg v. Prudence Mutual Casualty Co.*, 120 Ill.App.2d 68, 256 N.E.2d 71; *Gribben v. Interstate Motor Freight System Co.* [38 Ill.App.2d 123, 186 N.E.2d 100]) It is the duty of the appellant to present an abstract or excerpts sufficient to set forth every error relied upon for reversal. (*Dempski v. Dempski*, 27 Ill.2d 69, 187 N.E.2d 734.) The abstract presented in this case falls far short of the requirements of Supreme Court Rule 342 and the fundamental requirements necessary to properly present a case for review on appeal and the appeal must accordingly be dismissed." 9 Ill.App. 3d 807, 810-11, 293 N.E.2d 153, 155.

■■ However, the appellee does not challenge the sufficiency of the excerpts and we are mindful that Rule 342(g) (Ill. Rev. Stat. 1973, ch. 110A, par. 342(g)) gives the reviewing court wide discretion in imposing sanctions for failure to comply with the requirements of the rule. We will not summarily dismiss this appeal in this instance as we find no absence of a good faith effort to comply with Rule 342, and we find the shortcomings less aggravated than those in *Shaw*. We do not approve, however, of the failure to comply fully with the Rules.

The contract between the railroad and the third-party defendant contained the following provisions:

"10. Contractor agrees to indemnify and save Railroad harmless against all loss, damage, injury or death to the person or property, including damage to horticultural crops and ornamentals, of any person, firm or corporation (including Contractor and Railroad and their respective employees, agents and officers) which may occur as a result or in consequence of the acts, omissions or defaults of the Contractor or its employees in performing the services contemplated herein. The Contractor agrees to pay 100% of the cost of all justifiable claims resulting in damage to horticultural crops and ornamentals.

11. Contractor will indemnify and save harmless Railroad against any and all claims, demands, suits, costs, charges, recoveries and sums of money, which may arise out of, or which Railroad may be subjected to, or which may be made, alleged, brought, prosecuted or recovered from or against Railroad by any officer, agent, servant or employee of Contractor, for or on account of any personal injury or death suffered or sustained by, or resulting

to, any such officer, agent, servant or employee of Contractor while in, upon or about any tracks, right of way, stations, platforms or other premises of Railroad, whether in use at the time by Contractor or by Railroad, howsoever such accident, personal injury or death may arise or may accrue and whether the same be, or may be alleged to be, the result of negligence of Railroad or any of its agents, servants or employees, in or about the operation, management, superintendence or control of any train, engine, car, property or premises of Railroad, or otherwise. Contractor agrees to endorse his Comprehensive General Liability Policy to provide limits of liability for bodily injury of $100,000/$300,000 and $50,000/$100,000 for property damage."

The evidence on behalf of the railroad was that the plaintiff employee was sprayed with weed killer while working as a switchman clearing cars from yard tracks to enable the spray equipment to move about the yards. This equipment consisted of a truck mounted on railway wheels, a "hi-rail" truck, which moved along the tracks. Spray nozzles, attached to moveable arms, projected the chemical weed killer onto the road bed as the self-propelled truck moved along the tracks.

The truck and spraying equipment were operated by an employee of the third-party defendant. An employee of the railroad, a "pilot," pointed out to Bogle's employee the tracks to be sprayed. He testified that one of his duties was to keep a lookout ahead for employees of the railroad.

■■ We have not detailed the factual background with more specificity as we hold that paragraph 10 of the written contract provides for indemnity under these facts even if the railroad were partly or jointly responsible for the injury to its employee.

We perceive no ambiguity whatsoever in the protection afforded the railroad under this provision. Under paragraph 10 of the contract, quoted above, the contractor agrees to indemnify the railroad for all loss or injury to any person (including the railroad and its employees) which results from the "acts, omissions, or defaults" of the contractor or its employees while performing the agreed-upon services.

While third-party defendant has discussed at length common-law indemnity on active-passive negligence, this case was not tried on this theory and we shall not address ourselves to those authorities cited by appellant nor to a specious argument advanced that dismissal of the count of the third-party complaint on common-law indemnity was a final determination of third-party plaintiff's entire cause of action under the doctrine of res adjudicata. Obviously there is no merit to this argument since the action based on express contractual indemnity involves

elements of proof different from those required to sustain a judgment on common-law, active-passive indemnity.

A party may agree to indemnify another from acts partly or wholly the fault of the indemnitee. It has long been established that such agreements are not against public policy. *John Griffiths & Sons Co. v. National Fireproofing Co.*, 310 Ill. 331, 141 N.E. 739 (1923).

We consider the broad language of the indemnification agreement as clear and unambiguous as the language held to provide indemnification in *Rios v. Field*, 132 Ill.App.2d 519, 270 N.E.2d 98 (1971); *Gust K. Newberg Construction Co. v. Fischbach, Moore & Morrissey, Inc.*, 46 Ill.App. 2d 238, 196 N.E.2d 113 (1964); *De Tienne v. S. N. Nielsen Co.*, 45 Ill. App.2d 231, 195 N.E.2d 240 (1963); and *Deel v. United States Steel Corp.*, 105 Ill.App.2d 170, 245 N.E.2d 109 (1969). It is not necessary that specific reference to indemnification against liability arising out of the indemnitee's negligence be provided for in the agreement. (*Spurr v. LaSalle Construction Co.*, 385 F.2d 322 (7th Cir. 1967).) In each of these cases the use of the descriptive words "any and all," in modifying the occurrences to which the indemnifying agreement would apply, were held to require indemnification for losses or injuries caused by the indemnitee's sole negligence. While we do not consider the operative language of the instant agreement to be as broad, we are not called upon to decide the outer limits of the duty to indemnify imposed since we do not believe the injury arose from the negligence or conduct of the railroad, and the jury so concluded.

It is clear that the injuries to plaintiff, Ahlvers, resulted as a proximate result of the acts, omissions or defaults of Bogle. Neither the characterization of this conduct nor the conduct of the railroad's employee as negligent is of significance nor helpful to a determination of liability under this indemnification agreement.

■■■ The jury was instructed that the railroad had the burden of proving that it did not commit any act, omission or default which caused or contributed to cause plaintiff's injury, and further that the contract of indemnity in evidence did not cover losses or liabilities arising from the acts, omissions or defaults of the indemnitee, unless clear and unequivocal language required such construction. These instructions were given at the request of the third-party defendant and in our opinion were unduly favorable to third-party defendant. We do not believe it was proper to allow the jury to construe the meaning of this contractual provision, but where done at request of third-party defendant, it can hardly complain that the jury has resolved the issues against it. The meaning to be given to plain words of a written instrument is a question

of law for the court's determination where the parties have attached no unusual or peculiar meaning to those words. It would be a departure from fundamental law to allow a jury to determine the meaning of such a written agreement. *Rosenbaum Bros. v. Devine*, 271 Ill. 354, 111 N.E. 97 (1915); 17A C.J.S. *Contracts* § 616 (1963).

Nothing we have said here conflicts with the holding of *Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 294 N.E. 272 (1973). In *Tatar*, the Court held that a general contractor was not entitled to indemnification from a subcontractor where the injury to the plaintiff workman, the subcontractor's employee, was caused solely by acts or omissions of the contractor's employees. The injury was in no way caused by any conduct or omission on the part of the sub-contractor. The court interpreted the particular contract of indemnity as not providing for indemnification under those facts, noting that indemnification provisions are so varied in their terms that no general rules of construction can be formulated.

Here the jury determined that plaintiff's, Ahlvers, injuries were caused by an act or omission of Bogle. We are not required to construe this particular contract of indemnity to determine if it provides for indemnification against the negligence of the indemnitee. *Cf. Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.*, 395 Ill. 429, 70 N.E. 2d 604 (1947); *Zadak v. Cannon*, 59 Ill.2d 118, 319 N.E.2d 469 (1974).

■■ Bogle has suggested that a comparison of paragraphs 10 and 11 requires a more narrow construction of the scope of indemnity provided by paragraph 10. We agree. If Ahlvers were injured by the sole act or negligence of the railroad, Bogle would have no duty to indemnify the railroad for any loss it might sustain in an action brought by its employee. It seems apparent, however, that under paragraph 11, the railroad would be entitled to be indemnified for any loss sustained in an action brought by Bogle's employees, even though the loss were caused by the sole negligence or fault of the railroad. We read these two provisions as directed against different perils to which the railroad might be subjected because of Bogle's activities in performing its contract.

The judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and G. MORAN, JJ., concur.